Circuit is now in session. and I welcome you to the Ninth Circuit. And you probably thought that you have a fan club out there, but we actually have students from Southwestern Law School here that are observing. So you're going to have to show them how it's done. So I don't want to put any pressure on you. I'm sure that you both came very well prepared. But that being said, the students are all watching. So I think we have 19 students, and I think we have Professor Knapp. Hello, how are you? You do a lot of appellate work as well, correct? It's mostly in the area of immigration, which this is not today. And I don't think the dean's here today, correct? All right. And so we welcome all of you. And our schedule today, I'm going to first call the submitted matters on calendar, and then we'll go to the argument calendar. And for the students that are present, and I've advised my colleagues and all of you that this year I'm the jurist in residence at Southwestern Law School, so they're coming here to observe. And that involves teaching some classes and interacting with the students. And they're all very excited to see oral argument today. And so after oral argument, the panel, we will convene and do our deliberations on the case that we have. And during after that period, while that's going on, our law clerks will speak to the students and talk about being a law clerk and whatever they want to talk about, and their judges or whatever. And then we will come out after we complete our deliberations and we'll speak with the students. And, of course, I'm sure that everyone understands this is a pending matter, so, of course, we won't be discussing this particular case, but just general court proceedings as far as that goes. Now, the submitted matters, I'm just going to call them for the record, and then we'll go and I'll explain how I do the oral argument. Carlos Gonzalez Benitez v. Todd Blanche, 17-72643, 18-71411. That matter's been submitted on the briefs, will be submitted as of this date. Harpreet Singh Kara, 21-717. That's submitted on the briefs, and that will be submitted as of this date. United States of America v. Mark William Anton, 24-7261, submitted on the briefs, will be submitted as of this date. United States of America v. Terrence Pearson, 24-7672, submitted on the briefs, will be submitted as of this date. United States of America v. Jax Polson, submitted on the briefs. That's 25-1856, submitted as of this date. The last matter, Roberson Flavio Santana v. Todd Blanche, 25-643, submitted on the briefs, and will be submitted as of this date. So, generally, just for the class in general, you know, probably, I think I noticed there's only one case on for oral argument today. And in the Ninth Circuit, we decide whether we want to hear oral argument on cases. It's not up to the lawyers. We decide if we don't think that oral argument will assist us and that we can decide it on the briefs, we make that decision. It's just sort of this state was picked away in advance, so there's only one case on for oral argument. For example, yesterday we had a number of cases, and then tomorrow and Friday we have a lot more cases. But I think that, you know, sometimes one case is just quite the right amount of time for people when they're observing as far as that goes. Now, regarding the case that's on for oral argument, Multiple Energy Technologies v. Seth Kasten, 24-4691. Now, for the parties that are here for oral argument, and I believe that this is particularly reviewing an order of Judge Wright, correct, in this matter, which might be interesting to the students and it's only by chance, but Judge Wright is a graduate of Southwestern Law School, so I think that that might be interesting to you as well. Now, if you are the appellant in that matter, the 15 minutes means your total amount. So if you wish to reserve any time for rebuttal, that has to be included within the 15 minutes. Expect to be kept to your time. However, and when you come to the podium, if you're the appellant, if you tell me aspirationally what you would like to reserve for rebuttal, I will try to remind you, but it's your responsibility to keep track of the time. The clock counts down, then it goes up. It doesn't mean I gave you extra time. It means you've moved into overtime. However, I know you came here to say certain things, and we hope you have that opportunity, but as well you have to understand that we have to decide your cases, and so it's important that I and my colleagues have all of our questions answered. So if your time has expired but one of the judges is asking you questions, you don't need permission to proceed, please answer our questions if we take you into overtime. That's perfectly acceptable. I think that at this point we're ready to proceed, but I think we have a question of the parties before we start because I don't want to burn your time up as far as that goes, and I'm not sure. Will it pick up the recording if they're not at the podium? Okay, so maybe the lawyers just could come to the podium for a question that I have, and it appears that Hologenics was in bankruptcy and that was known, but Kazdin also filed bankruptcy after the trial and before the final motions were decided in this case. I'm assuming, I think in the past there was a limited— obviously the bankruptcy court can stay proceedings, but there was a limited lift of the stay for the court trial to proceed. Is that correct? Yes, Your Honor, and also for Mr. Kazdin to pursue his appeal. Okay, so he has permission, so the bankruptcy court is not a factor in staying these proceedings. My understanding is that the lift of the stay was to cover the post-trial motions and also the appeal. The other party? Yes, Nicole Sullivan from Multiple Energy Technologies. That's correct, and I'm counsel for them, Multiple Energy Technologies, in the bankruptcy. Okay, well just—we were going to do oral argument today anyway, but we want to make sure that on that particular issue. Okay, so we're ready to proceed with the appellant then. Good morning. Good morning. Thank you, Your Honors. Kian Tamidoni from Benidorm and Sirlin, appearing on behalf of Appellant Seth Kazdin. And I also have Mr. Kazdin in the courtroom today. He's the gentleman in the yellow tie in the front row. All right. I will do my best not to rehash the briefs. I trust you're familiar with them. I'll just do my best to provide a high-level overview and try to synthesize some of the issues in this case. Fundamentally, I believe what this case at its core is about is issues that are caused by MET's decision to pursue Mr. Kazdin for a grievance that it ultimately has with the company that he manages. And the issues are essentially about whether MET has a remedy against Mr. Kazdin or if the substantive law gives it other remedies against either hologenics or under other provisions of the Lanham Act. Now, as for the agency defense, this is essentially a grievance over a breach of contract because Mr. Kazdin is not a third-party interloper. Under California law, as long as he's acting in the scope of his agency and on behalf of his principal, he's effectively an extension of his corporate principal. And neither he nor hologenics can be sued in tort for interfering with a contract. So it's California law that would apply? Correct, Your Honor. Yes. All right. So is California agency immunity tests an objective test? Did the agent act for and on behalf of the corporation, or may the court consider the agent's subjective intent? I believe the test generally follows the agent's subjective intent. Again, it's about their contemporaneous mindset when they're acting for the corporation. If they are in the belief that they are acting in the corporation's interest and that they're acting to advance the corporation's interest, then there's an immunity because they're falling within the scope of their agency. Now, if there was a dispute— Counsel, so why hasn't the district court already made that finding when it found that Mr. Kazdin was acting for his individual advantage? That that was the subjective motivation? So the district court found that Mr. Kazdin was acting for his individual advantage, but the particular evidence that was pointed to were acts that Mr. Kazdin were actually doing in advance of hologenics' interest. So the key example is that supposedly Mr. Kazdin was promoting Sealy and hologenics' product, and in doing so was somehow positioning himself to gain because he had a bonus that was tied to hologenics' business performance. But he only benefits if hologenics benefits, and it's akin to very common compensation packages for corporate employees. They incentivize the employees to work hard on behalf of the corporation, and sometimes they tie compensation to that. So here Mr. Kazdin, if he was promoting Sealy and to the extent that that gives him a bonus at the end of the year because the company does better, it's because he's being incentivized by the company to do his job. But wasn't the decision that we're talking about is to file for bankruptcy, that decision? Yes. And he voted as a member of the board for that decision. Correct. There was two particular pieces of conduct that the court focused on. One was promoting Sealy, which the plaintiff has argued was in violation of the settlement that they had with hologenics. The other act was filing for bankruptcy. But Mr. Kazdin, as with the other board members, voted for bankruptcy because he's trying to protect hologenics from surmounting liabilities. So that's where I'm having a bit of trouble because we're fighting over a question of fact about what Mr. Kazdin's intent was. According to your understanding of what the applicable standard is, just to understand what's going on in Mr. Kazdin's mind, was he acting for the interest of himself or was he acting in the interest of the company? And here the district court made a factual finding, supposedly, and we are on appeal. And to disturb that finding, it's a really high bar, isn't it? No, Your Honor, I don't think so because under California law, it's not merely enough to lose the immunity just because you've done something that benefits you. If you believe that you are acting for your principal and your principal does not dispute that, they think you're doing your job for them as well, then you're within the scope of your agency. Well, so you're kind of saying a Venn diagram. He could certainly have been acting within his own best interest, but he still could be acting within the interest of the corporation. Absolutely, Your Honor, yes. But, well, but did Judge Wright get that wrong? Did he say, is it, I mean, could we still accept that it was within Mr. Kazdin's interest to recommend that decision, but could he still be entitled to immunity? Yes, he can. Did Judge Wright make that mutually exclusive? I believe he did because the way Judge Wright analyzed this, he essentially said that the mere fact that Mr. Kazdin is benefiting undercuts his immunity. And that's essentially focusing on just the fact that he benefits, and it's detaching it from the fact that he has a motivation to act for his principal here. So the judge should have also analyzed whether or not it benefited hologenics, correct? Absolutely. You have to do that in tandem with analyzing his own motivation. So if they're both aligned, then he gets the immunity, but what if there's a mixed motive or things of that nature? Is there a test that determines all that? So under California law, there's been, I think, two sort of lines of authority. There's a line of cases that essentially have a mixed motive test, which is as long as the principal's interest is one of the motivating factors for your action, you have immunity. There's another line of cases, somewhat more recent, that talk about predominant motive, and if your predominant motive is in favor of the corporation, the principal, then you still have immunity. But with whichever test you're using, the thing that they have in common is that they are looking to whether you are acting on behalf of the corporation, either at all or as a predominant factor. And so it's not enough to just say, well, Mr. Kassin has benefited here. Well, if we were to ask the district court to look at it again, which test should we tell the district court to apply? So I think the question is somewhat muddled under California law because the two lines of cases don't really seem to reconcile with each other. But I think at its core, the mixed motive test is probably more useful because I don't see how a trier of fact can very easily distinguish what the primary motive might be in every single case. There might be certain cases where there's particular testimony or evidence that allows a distinction here. But the interesting thing about the California law here is that the sort of cases that talk about mixed motive versus predominant motive, they're actually much older cases. The newer cases in California, including the I believe it's the Asahi versus Actillion case, they essentially present it as more of a bright line rule. And I think the way to reconcile the sort of bright line rules cases with the older lines of authority is that if there is not a serious dispute that the defendant is acting within the scope of his agency, then it's essentially a bright, a bright line rule of immunity. We're just interpreting, we're giving our best gloss of California law, right? Yes. So that isn't binding in California cases after this. It would only be binding in this case. If we establish a test. I don't know. I don't think it would have any effect outside of California unless the California Supreme Court says otherwise. Well, then the California Supreme Court could say that we're wrong, but we decided we gave it our best go. Exactly. Because what's the jurisdiction here? Is diversity jurisdiction? Or what's that? Why are you in federal court? For the state common law, yeah, it would be diversity jurisdiction. So that's why we're applying California law? Correct. Okay. Yes. And which is the case that provides the, which case, which California case do you think we should follow? Is it Huynh, the one that gives them the predominant motive test, or? I think the predominant motive case was, I think, Huynh. There's other cases as well. Give me just a moment, Judge Bumate. I believe there's Los Gatos, Wanland as well. But it sounds like you don't have a really strong view which test we should apply. No, I think because in either case, either test. You think you could win under either test? Either test requires consideration of whether the defendant is acting for his principle. Either one. Yeah, but the problem is if we pick one test or we don't pick a test and tell the district then he comes back and you're going to, you know, he picked the wrong one. We're going to have to send it back again. Well, I don't think you could, it would be harder to win under one test than the other test. Yes, it would be. Because if it just is that he was acting for the principle and it was a unanimous decision of the board, that makes it easier for you. Right. But clearly the court, and the court's probably not going to change its view of Mr. Kasdan going back. Clearly the court thought that your client had, he was acting in his interest. So it's how much, how much, how do you weigh that? So I think if the court. I mean he could say, okay, well I don't think he was doing anything on behalf of the corporation. He was just acting on his own interest and I've thought about it now. Well, I think Judge Wright's own findings would undercut that rationale because he specifically found that Kasdan was benefiting because he was advancing Hologenics' business performance. And I recall there was a particular part of the transcript where he says Mr. Kasdan benefited and, in fact, so did his principle. And so I think the error in Judge Wright's analysis is that he also recognized that Hologenics was benefiting, but in his view the mere fact that Kasdan was also benefiting completely nuked any kind of immunity he had. Doesn't this discussion really point up the problem of a purely subjective intent test? In other words, someone could be predominantly acting for his own self-interest, but the actions fully align with the corporation's best interests as well. Think about a partner, an associate at a law firm. You're working at a law firm all those long hours to benefit yourself and to benefit your family, to make a livelihood. But you're working hard to advance the interests of the company as well. So it's perfectly aligned. When there's a problem, when you're not an agent anymore of the company, is when you're acting in a way that's contrary to the interests of the company. So if you're taking clients away from your law firm and bringing it to another law firm, or you're hiring contractors to benefit your own family who are those contractors, that's when you're acting disloyally and you're no longer an agent. And we already have this kind of test. I mean California has duty of loyalty tests, breach of duty of loyalty. And as far as I can tell, and I'm still trying to figure this out, but there doesn't seem to be a subjective motive test there. It's simply whether you are acting contrary to the interests of the company. And if you are, then you're no longer an agent. But if you aren't acting in the interests of the company, you're no longer an agent. So I don't know. I'm confused by California law, I confess. And I'm a little bit unsure of what the test should be. So if you can help us out a little. Sure, Judge. I think the best way to understand this issue is that if there is a dispute between the principal and the agent as to whether the agent is acting for the principal, then a subjective test that just looks to the principal's mindset is somewhat problematic because the principal might have a disagreement as to whether the agent is actually helping them out. But if there isn't a real divergence of interest between the principal and the agent and they between themselves don't have a dispute as to whether the agent is doing his job on behalf of the principal, then you just look to whether the agent believes he is doing his job. Does the principal disagree? And if the principal doesn't, then there's an immunity there. And it doesn't matter what the plaintiff might think. Well, if we give you that test, I can see ahead on this having been a trial judge. You're just going to go back and say that the board voted unanimously and therefore you got all these other board members that Mr. Kasdan doesn't have a voodoo power over to make them vote. They're voting independently, so therefore you win, right? I would think so, Your Honor. In this case, he's acting in accordance with his fiduciary duty. If he were to vote against bankruptcy here, he's sort of damned if he does, damned if he doesn't because if he votes in favor of the bankruptcy and that exposes him to tort liability, then he has that around his neck. Well, we wanted to – you didn't say how much time you wanted to save for rebuttal, but you're going down. I think we also wanted to talk about the salary issue, but we could do that on rebuttal if that's – how much time did you want to save? I've got to think about one minute here, but I asked for five minutes. Well, you're not getting five. I'll give you three. It'll be quick on the – Can I just ask one quick question? Sure, you can. If we were to agree with you on the agency immunity question and remand it, do you think we need to reach the Norr-Pennington issue? I think it could be helpful because the Norr-Pennington is a blanket immunity. And so if you agree with us on that issue, I think you wouldn't have any liability whatsoever under the tort because – Under Norr-Pennington. Right, because the act of it is privileged, and the Groverman is the bankruptcy petition. Okay, I'm going to give you right now three minutes for rebuttal. Thank you very much. Okay, thank you. All right, we'll hear from the appellee. Good morning. Good morning. Thank you. Nicole Sullivan from White and Williams for Appellee Multiple Energy Technologies. I want to start with, I think, what is a false premise that the tortious interference conduct was only the bankruptcy filing. You know, there's no talk by appellant's counsel here about the wrongful conduct. And you can't have – the test, I think, is under Hume, if I say it right, the predominant motive. And you cannot say that Mr. Kasdan was acting predominantly motivated for his principal's benefit by restarting a false advertising campaign that the company had just settled, agreed to a permanent injunction, that permanent injunction was so ordered by Judge Anderson, and then put the company into bankruptcy and restart the false advertising at the same time, believing that the company would be immune and that he himself would be immune as a so-called agent of the company. Well, it seems, though, that Judge Wright might have gotten the law wrong in that he just stopped the analysis at, Mr. Kasdan, you're acting in your interest, and didn't consider that he could be acting in his interest, but also he could be acting in the interest of halogenics. So if he did – if he applied the wrong law, that's a hard – that makes it difficult for us to affirm on that. Can you disabuse me of that, that the judge got the law too narrowly? Yeah, I don't think that the judge got the law too narrowly. There was a lot of discussion during the trial about personal motives and personal benefits to Mr. Kasdan, and I think that there was a lot of conflating of what's so-called agency immunity and manager's privilege under California law, which is slightly different, and the cases that Mr. Kasdan relies on here, even in this argument, are really true agent cases where they are third parties outside the company and not officers of the company and shareholders. I'm sorry. Are you saying that the district court did make a finding that it was a – that he acted predominantly in self-interest? I think that the district court found that he wasn't acting for the company's benefit at all because of those reasons. Go ahead. No, go ahead, Judge. Yeah. Where is that? I think when he – when he talks about – it's on page ER 53 to 54. No, sorry. Yeah, 53. He talks about the exceptional facts of the case and that there was – the evidence was overwhelming that Kasdan not only interfered with the settlement agreement, but he simultaneously ensured that his interference served his personal interest. I think – Yeah, but that's not a finding that's not in the interest of hologenics. I mean, I think, you know, the Rule 50 motion is decided de novo, and I think that, you know, there's no – there's no view of the facts where an officer of the company committing purposeful, wrongful conduct that the company had just settled and caused the company to immediately violate the court-ordered permanent injunction could be said for the benefit of the company just because it would – Yeah, it would require more money. Every time an officer recommends a particular action for his company to take, and that action happens to break the law, that that officer is no longer an agent of the company? I think if you look at the PMC, Inc. v. Kadisha case out of California, that case held that officers are personally liable for tortious conduct when they authorize, direct, or participate in the wrongful conduct, even if the company was liable. I think Judge Wright's point here, and it's not every single principle. Like, Mr. Kasdan wasn't sued by MET in the first case against hologenics, right? It was the company. But these are egregious circumstances where the officer agrees, negotiates the settlement, the permanent injunction, and then just restarts the same false advertising, and there has to be a deterrent effect for that, and there has to be a deterrent effect for officers and owners of companies not to engage in that conduct that would – this isn't a garden variety breach of contract case. It's not two parties, two companies coming together, entering into a contract, I buy your widgets for $100 or $100,000, I choose not to pay for those widgets anymore because I undercut it or did something fraudulent or whatever, did something unlawful. That's not this case, right? This is a settlement agreement to stop and cease the false advertising of Seliant for being FDA approved that was causing harm in the market to MET. But there is the concept of efficient breach, right? I mean, it could be efficient for hologenics to breach a settlement agreement. By continuing the same false advertising and violating a court order? I mean, I don't think that the law should encourage that. Well, I know, but I'm just saying there's a concept that companies can intentionally breach a contract because it is in the rest's interest. Yes. So that's the problem. We don't have a finding here that the breach of the settlement was not in hologenics' best interest. So hypothetically, and I know you're not going to agree with the hypothetical, so you don't have to say that because that's when we teach students. They always say you still have to answer the hypothetical. Let's say hypothetically, and I'm only saying this, that we don't agree with you and we think that Judge Wright got the law wrong in rejecting Mr. Kasdan's agency immunity defense, and we remand the matter. What should that remand say in terms of what does California law say on this? Yeah, I think, sorry, I was just looking for it because I have the Hugh Case language written out. I think it's a qualified privilege. I think that's where the cases went, and you can look at the Hugh Case and the Woods Case and this PMC case, and it says the interest of the principal must predominate. So I think that that would be, if you wanted to remand it, that that would be the standard under which the court would be directed to explain its findings. Is that the only, if it's in the interest of the corporation, that's different than the predominant interest because if it's predominant, we already know that the court thinks that Mr. Kasdan had, it was in his best interest in some way. So predominant then means that the court would have to weigh it and say that he cared more about himself than he cared about the corporation, even though it was in the corporation's best interest to declare bankruptcy or to breach the contract or whatever. So do you think that's what California law says it has to be predominant, or is it confusing? I think the law, I think that there's, I think the courts, like Mr. Kasdan did here during the trial and in this appellate briefing, conflate the agency immunity standards with the manager's privilege, and I think that's what the confusion comes from here. Doesn't Huynh talk about manager's privilege? It does. It does. It talks about, it has a lengthy discussion. Right, but you're relying on Huynh. Well, I'm relying on, I would rely on Huynh, but I would also rely on the PMC case I just talked about, that officers can be liable when they engage in the same wrongful conduct. This isn't a company also like IBM, where it's a massive company with lots of officers. This is a very closely held company. Mr. Kasdan is the CEO and owner. He testified that he controls the company and he approves everything himself, right? So this is like a different circumstance. So I think that, you know, to your question earlier, Judge Tong, like it wouldn't be every single officer would now be subject to tortious interference for advising a company to do something that ends up becoming wrong, whether it's infringing on a mark or it's false advertising or something else. But in these circumstances— How many people were there on the board? Because that was one thing they emphasized, that it was a unanimous vote of the board. Yeah, but the only person who talked about the purpose of the bankruptcy at trial was Mr. Kasdan, who's very self-interested. Well, I know, but how many board members voted? I don't want to speak out of turn, but I think there were five board members. Five's coming to mind to me, too, but I don't know. Do you want to talk about—the district court calculated Mr. Kasdan's salary and seemed to say that it was recoverable as a profit, but there really isn't any analysis here. Would you acknowledge that what you can disgorge are the profits and somehow you would have to tie the salary to the profits? Or is there a problem here? Not to say that salary couldn't be profits, but I'm not really seeing it in this record that it's developed. Judge Wright found in his post-trial order that Mr. Kasdan's salary was 100% derived from the sales and therefore would qualify as profits. I mean, he didn't, I don't think, provide a further explanation than that. The U-Haul case talks about any financial benefit can be disgorged, and then we have the powertrain case that Mr. Kasdan cites, too, in his papers, but then that— It's profit is the operative word, not salary. I mean, if it just listed salary, that's really easy, but you have to make a link that the salary comes from the profit. What's the analysis other than a conclusionary statement? Judge Wright said—I mean, you're asking what analysis Judge Wright did? Yeah, how did he show that the salary came from the profits? That the only product that Hologenic sold is Cellian. The only revenue that it creates is from those sales of Cellian, and so therefore his compensation is 100% profits from those sales. But the problem is that's Hologenic's profits, right, not his profits? No. What Mr. Kasdan earns isn't Hologenic's profits. Well, you're basing it off of the product that Hologenic sold, right? You're saying it's the only product, and that made all the profits for the Hologenics. I mean, that then in turn becomes his salary, but that's a different question now. I mean, I don't disagree with Judge Callahan that, you know, it's not robustly detailed in Judge Wright's order, but I think that, you know, that was the finding that he made, and I think when you look at the cases, it's an abuse of discretion standard. Well, there's a legal question there whether or not salary can ever be profits. Oh, but I mean— This is just a textual matter. How do you say that a profit of a company is the employee's salary? I don't think it's a legal question. I think the word profit is factual findings as to what would constitute profits in the different circumstances because if you took Mr. Kasdan's view where you could only have profits if you're the actual party selling the product and receiving the revenue, then no one other than the seller would ever be liable under the Lanham Act, and that's just not the state of the law in the Ninth Circuit or any other circuit that I'm aware of. But there's another prong in Section 1117. So the first prong that we've been talking about, the plaintiff could recover defendant's profits, and I find a hard time finding that it was Kasdan's salary that equated to his profits. But there's another category here, any damages sustained by the plaintiff. And so there is a remedy potentially available here, but the district court didn't find any damages, right? The district court said, I'm going to find defendant's profits to be his salary. That's right. And then the district court decided to enhance those profits that it found was his salary and trebled it. And I would like to talk about that as well because there are cases in the Ninth Circuit that it found that you can and should do that when there's risk of continuing to mislead the public, and it was the Binder case where they ended up doubling the profits. And this was decided in Central District of California in 2011 after the Allergan case. And then there's the Omnigen Research case out of the District of Oregon from 2017, where they found that the underlying conduct, as well as litigation conduct, showed repeated disregard for the plaintiff's rights, the law, and the court's orders and found that enhancing damages to fully compensate plaintiffs will have an important deterrent effect. So, counsel, you just said enhancing damages, right? But those cases, did they involve enhancing profits? I misspoke. They were troubling the profits. Okay. I misspoke. Both those cases were, it was troubling and doubling profits. Let me take you on the, okay, let's just say hypothetically once again, let's say we don't agree with you that the judge got the law correct on the agency and that we don't agree with you that there's enough of a link between profits and salary. Can, do we need to reach the Noor-Pennington? And can we also, could we affirm the attorney's fees under the Langham Act, even if we disagreed on those other points? Sure. I mean, if you disagree on those other points, I think the proper remedy would be a remand to judge Wright for further consideration per the court's instructions. I'll start with the easier one first is the attorney's fee award. I mean, I think there is a finding that this is an exceptional case. Whether you, whether there's any damages awarded or at all, whether it's profits or otherwise, I think it's an exceptional case based on the fact that. So I guess what I'm asking you, could we remand on those issues, but still affirm on the attorney's fees? Yes, you can. I think you can because there is the finding that there's an exceptional case is separate and distinct from those findings. And Mr. Kasdan isn't challenging the elements of the tortious interference claim or the Langham Act claim like that. There's no challenge to the findings by the jury that the Langham Act was violated. It's conceded on appeal. So whether it's an exceptional case or not can be decided separate and apart from whether you affirm on the award of damages. Okay, so hypothetically, I'm sorry, just hypothetically really quickly, if we reversed on the issues that we've talked about, but affirmed on the attorney's fees, do we need to reach the Noor-Pennington issue? Well, I don't think that Noor-Pennington has any application here, but I don't think that you. Well, and that's what Judge Wright said, right? That's right. He said it before trial. So should we affirm on that or should we just? We don't really have to reach it here, do we? You don't have to. Let me think for a second because I haven't thought of that question before I came here. I think it should get affirmed just to have a clean record because there's no application for the Noor-Pennington. I know that Mr. Kasdan likes to hyper-focus on voting to put the company into bankruptcy, but that was a pre-orchestrated plan that he had, and it wasn't for the benefit of them and it's not his petitioning activity, and the false advertising was a large component, the violation of the permanent injunction. Dr. Visman, who was MET's principal, testified at trial that the non-monetary component of the settlement agreement was just as important, if not more important, than the monetary component. Okay. Judge Tong, I know I interrupted you. Go ahead. I think you're going to regret letting me ask this question, Judge Callahan.  I'm going to throw you a curveball because I'm going to ask this question of your friend on the other side too. There was an argument sort of hinted at in footnote 13 of Mr. Kasdan's brief regarding federal preemption. As I read that argument, state law causes of action, including tortious interference claims, that are premised on the filing of a bankruptcy petition, that that sort of claim is preempted by the bankruptcy code. And so, you know, I say it's a little bit of a curveball because it was in a footnote, so not necessarily expecting you to have answered that, but to me that seems potentially a straightforward way to resolve at least the part of the tortious interference claim that is premised on the bankruptcy filing. Except it was never raised below. It wasn't raised pretrial. It wasn't raised during the trial. It wasn't raised in the post-trial motions. The first mention of it would be in this footnote 13. And to clarify something that my friend said earlier, this case was in the federal court on Lanham Act jurisdiction, the federal question, and the state law claims were on supplemental jurisdiction, although there is diversity jurisdiction as well, but it was on the supplemental for whatever that's worth. So I don't think that you can address that on the preemption grounds now at this time because I think it's been weighed by Mr. Kasdan, the same as the liability determinations and the damages under the tortious interference and the liability under the Lanham Act. No further questions. Thank you. Thank you for your time. All right. Thank you. Okay, so I'll give you four minutes based on the time that I checked. Thank you, Your Honor. Counsel, I don't want to eat up too much, but can you just quickly address the preemption? It's an argument tucked into your footnote. Yes. So, Your Honor, it is something that Mr. Kasdan did not raise in the trial court, and so we did not expand on that very much in his appellate briefing because it wasn't teed up properly in the trial papers. But the reason I was including that in there is because I want to just highlight the gravity of suing someone for filing bankruptcy because I think whether you're acting on behalf of a principal that you're trying to protect and you're taking privileged actions on behalf of them or you're exercising your First Amendment right to petition the government for protection or as a matter of bankruptcy preemption, I think it's a very grave thing to sue someone for filing for bankruptcy, and I just wanted to highlight that for the court. But you kind of admit that it really hasn't been fleshed out. No, it has not been, Your Honor. That's why we focused primarily on the Norm Pennington argument. Quickly, I want to just address the disgorgement question that you guys were asking about earlier. The critical thing, I think, to remember about the Lanham Act is that under Section 117A, it states that in assessing profits, the plaintiff shall be required to prove defendant's sales. And I think that is, in a nutshell, the issue with the disgorgement. Mr. Kasdan didn't have any actual sales here. He had a salary. And I know that MET has relied on the U-Haul case, as did Judge Wright, but I believe that case actually highlights the point here because in the U-Haul case, U-Haul sued a competitor for bringing a false advertising claim. The court ordered disgorgement, and one of the issues on appeal was the competitor was saying, we don't have any profits because we've run at an accounting loss every year. We don't have profits literally because we lose money. And the Ninth Circuit rejected that argument, saying, no, you're still getting a financial benefit, quote, unquote, from the sales. But that financial benefit language in context was still tied to the fact that the competitor was selling the infringing product that was subject to the false advertising. It wasn't financial benefit in the abstract. It was still tied to the sales. And so when you look at the U-Haul case, it fits hand in glove with the text of Section 117, which is that in assessing profits, the plaintiff shall be required to prove defendant's sales only. So are you saying salary can never be profits or it can be under certain factual findings? Under certain factual circumstances, there have been cases where a salary has been found to be essentially a diversion of profits because the person earning the salary isn't actually doing any work. They might have an ownership stake. And so I believe the Powertrain case was an example of that where there is egregious circumstances showing that the company is just funneling profits to an individual by labeling it as a salary. But here we don't have any facts illustrating that kind of situation. Mr. Kazin worked as a CEO of this company. He was a manager. He had labor involved for his salary. And so it's not a improper steering of profits in the name of salary. It's actually for his labor. And I want to quickly address the question about the attorney's fees issue and whether this is still an exceptional case. I believe if the court agrees with us that there's no discouragement here, then MET is left with their damages and their nominal damages. And I think if you bring a Lanham Act case and at the end of the day all you recover is a dollar, that's not an exceptional case because an exceptional case— But that was what he was looking at at the time. He said it was exceptional and he knew it was only a dollar. Mr. Kazin? No, officer. I mean Judge Wright. There was only a dollar awarded by the jury at the time Judge Wright determined it was an exceptional case, right? Well, he also awarded discouragement, though. And so I think under the standard which looks to the litigating position of the parties, if you end up collecting a nominal damage award and that's all you get, I don't think it's an exceptional case under the Lanham Act. And I believe I'm about to run out of time. Counsel, one last question. Your friend on the other side said, how can an officer of a company be acting in the interest of his company when he has intentionally and repeatedly engaged in violations of the Lanham Act by making false statements and also in violation of the order? How can that possibly be acting in the interest of the company? And doesn't that take Mr. Kazin outside of the agency immunity defense? Thank you for asking that question. I believe it, if I have a moment here, it ties into the efficient breach issue because if you are finding that it's in your company's best interest to breach a contract, you do that. That doesn't get around the Lanham Act violations. The remedy for that is the Lanham Act. It's not a tortuous interference claim because the tortuous interference claim, the harm there is breach of a contract. You can do that if it's efficient. If there's false advertising, the remedy for that is the Lanham Act, not a tortuous interference claim. I'm asking whether someone is an agent to be accorded this immunity protection. Am I just required to look so narrowly, tunnel vision like, just at tortuous interference? Can't I look at other admitted violations of the law? I think it's important to realize that any time a defendant veers into the realm of illegal activity, sometimes it's intentional, sometimes it's not. I don't think Mr. Kazin wakes up in the morning and says, I want to violate the Lanham Act today. He gets up in the morning and says, I want to help my company promote sealant. And if that ends up veering into the realm of false advertising, the Lanham Act is the remedy for that. But he's still doing what he thinks is in the best interest of his company. And so as far as whether he's an agent, an agent might commit false advertising and there's Lanham Act damages for that. But whether he's acting as an agent for purposes of this contract, I believe he is because he's furthering the interest of the company. I hope that answers the question to the best of my ability. I don't think there are any additional questions. I want to thank both of you for your arguments in this case. It will be submitted at this time. Thank you, Your Honors. And I would like to say after I think that you both admirably represented your clients, and I definitely appreciate because I always tell students they have to answer our hypotheticals, not to argue with them, and I appreciate that you both answered hypotheticals. And I think that this obviously is a legally complicated and a factually complicated issue that I don't know that the students would have the same level of understanding of it that we would and that you do clearly. But it's clear that both of you did an excellent job of arguing and representing your particular clients in this matter. So thank you. Thank you, Your Honors. We're going to be in recess for our conference, and our law clerks will now talk to the students, and then we'll be out a bit later. And then I think after all of that you get a tour of the courthouse too. So, all right. Thank you. Thank you. Thank you. All rise.
judges: CALLAHAN, BUMATAY, TUNG